## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

THE NOCO COMPANY, an Ohio
Corporation,

          Plaintiff,

   v.

DELTONA TRANSFORMER
CORPORATION, a Florida Corporation,
DELTRAN USA, LLC, a Florida Limited
Liability Company, and DELTRAN
OPERATIONS USA, INC., a Florida
Corporation.

          Defendants.

Case No. 6:25-cv-00251

## COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR A JURY TRIAL

Plaintiff, The NOCO Company for its Complaint against Defendants,

Deltona Transformer Corporation, Deltran USA, LLC, and Deltran Operations

USA, Inc., alleges as follows:

## INTRODUCTION

1.     Through this action, The NOCO Company seeks to stop Defendants

from continuing to free ride off of valuable intellectual property owned by NOCO.

Defendants are making, using, offering to sell, selling, and/or importing Battery

Tender® portable jump starter devices that infringe two separate NOCO patents.

As set forth more fully below, NOCO seeks damages, costs and attorneys' fees,

and permanent injunctive relief as authorized by the Patent Act.

## THE PARTIES

2.      Plaintiff, The NOCO Company ("NOCO"), is a corporation organized under the laws of the State of Ohio, with its principal place of business in Glenwillow, Ohio.

3.      Defendant, Deltona Transformer Corporation ("DTC"), is a corporation organized under the laws of the State of Florida, with its principal place of business in Deland, Florida.  Upon information and belief, DTC is a business that is owned, operated, and controlled by members of the Prelec family.

4.      Upon further information and belief, Michael Prelec, Sr. ("Mr. Prelec Sr.") effectively owns and controls DTC.

5.      Defendant, Deltran USA, LLC ("Deltran"), is a limited liability company organized under the laws of the State of Florida, with its principal place of business in Deland, Florida.  Upon information and belief, Deltran was a wholly-owned subsidiary of DTC.

6.      Upon further information and belief, Deltran is no longer a wholly-owned subsidiary of DTC, but is now owned by DTC and members of the Prelec family, including Mr. Prelec Sr.'s son, Michael Prelec, Jr. ("Mr. Prelec Jr."), daughter (Mr. Prelec Jr.'s sister) and nephews (Mr. Prelec Jr.'s cousins).

7.      Defendant, Deltran Operations USA, Inc. ("Deltran Operations"), is a

corporation organized under the laws of the State of Florida, with its principal place of business in Deland, Florida.

8.      Upon information and belief, Deltran Operations is owned by DTC and members of the Prelec family, including Mr. Prelec Jr., his sister, and his cousins.

9.      Deltran Operations is listed as the "MANAGER" of Deltran in Deltran's 2024 Florida Limited Liability Company Annual Report, according to publicly available information.

10.     Deltran Operations and Deltran are referred to collectively as the "Deltran Defendants."

## <u>JURISDICTION AND VENUE</u>

11.     This action involves statutory questions and claims arising under the laws of the United States.  This Court has jurisdiction over the subject matter of this action pursuant to 35 U.S.C. § 271, et. seq., and 28 U.S.C. §§ 1331 and 1338.

12.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 because Defendants are subject to personal jurisdiction in this District, Defendants reside in this District, Defendants have committed acts of infringement in this District, and Defendants have a regular and established place of business in this District.

13.     This Court has personal jurisdiction over DTC because DTC is a

Florida corporation and because DTC resides in the State of Florida and in this District as it maintains its principal place of business in Deland, Florida.

14. This Court has personal jurisdiction over Deltran because Deltran is a Florida limited liability company and because Deltran resides in the State of Florida and in this District as it maintains its principal place of business in Deland, Florida.

15. This Court has personal jurisdiction over Deltran Operations because Deltran Operations is a Florida corporation and because Deltran Operations resides in the State of Florida and in this District as it maintains its principal place of business in Deland, Florida.

## BACKGROUND

16. Founded in the greater Cleveland, Ohio area in 1914, and continuously owned and managed by the same family since then, NOCO is a power supply and consumer electronics company. Among other things, NOCO is in the business of designing and marketing innovative, premium battery products including jump starters, battery chargers, cables, and accessories. As set forth more fully below, through its innovations, NOCO has set a new standard in the performance, design, and safety of lithium-ion portable jump starter devices.

17. Since the early days of automobiles in the 1900s, car batteries have provided power to start engines. Batteries lose charge over time, and eventually

lack sufficient power to start the car. When a car battery dies, the engine can be started using an external current source, a process known as "jump starting." The conventional way to jump start a dead car battery has been through the use of "jumper cables," where two cables run from the positive and negative terminals of a live battery (usually in a running car) to the corresponding terminals of the dead battery.

18.    Using jumper cables to provide the current needed to start a car with a dead battery has long been problematic, even dangerous. This method can entail, among other things, a second car with a live battery or a heavy and bulky lead-acid battery system to provide the current boost. The method also presents a risk that the cables are improperly connected to either battery, which may cause sparks and short circuits that damage the car and potentially injure those performing the process.

19.    NOCO solved the safety problems presented by jump starting a car with jumper cables at least as early as 2014 and introduced what is now known as the NOCO BOOST® ULTRASAFE® and ULTRASAFE 2.0® jump starter products.

20.    NOCO's NOCO BOOST® products are tremendously popular and are the market-leading compact lithium-ion battery-based jump starters in the United States. The NOCO BOOST® products have become known for safety, ease of use, and reliability.

21.    NOCO is an innovator and has made substantial investments in research and development, resulting in NOCO having been awarded numerous utility and design patents, including the asserted patents identified below, that cover key safety and performance features of NOCO's NOCO BOOST® products.

22.    Some of NOCO's game-changing patented inventions relate to safety features for eliminating overcharge and/or over discharge of the lithium-ion battery packs that power NOCO's jump starter devices.  Among NOCO's patents covering these features are the two being asserted against Defendants: U.S. Patent Nos. 12,187,143 ("the '143 Patent") and 12,208,696 ("the '696 Patent") (together, "the Asserted Patents").

23.    The '143 Patent is entitled "Portable Vehicle Battery Jump Start Apparatus With Safety Protection."  The '143 Patent was duly and legally issued on January 7, 2025, by the United States Patent and Trademark Office ("USPTO"), a true and correct copy of which is attached hereto as Exhibit A and by reference incorporated herein.  NOCO is the assignee and owner of all right, title, and interest, including the right to recover damages for past infringement, in the '143 Patent.

24.    The '696 Patent is entitled "Portable Vehicle Battery Jump Start Apparatus With Safety Protection."  The '696 Patent was duly and legally issued on January 28, 2025, by the USPTO, a true and correct copy of which is attached

hereto as Exhibit B and by reference incorporated herein. NOCO is the assignee and owner of all right, title, and interest, including the right to recover damages for past infringement, in the '696 Patent.

<u>**DEFENDANTS' INFRINGING ACTIVITIES**</u>

25.    Unfortunately, the success and popularity of NOCO's NOCO BOOST® products has resulted in imitation, copying, and unlawful piggybacking off of NOCO's substantial investment in its intellectual property rights, including the Asserted Patents.

**A.    Defendants Are Related Entities.**

26.    Upon information and belief, Defendants are all privately-held companies that are owned and controlled by members of the Prelec family.

27.    According to Mr. Prelec Jr., DTC is "a family business that was incorporated in 1965." *Prelec v. Deltona Transformer Corp.*, Case No. 2023-12871, at ¶ 57 (Fla. Cir. Ct. Mar. 5, 2024) (attached hereto as Exhibit C and by reference incorporated herein).

28.    According to DTC, Defendants' "closely connected" relationship is one of "contractual entanglement." *Deltona Transformer Corp. v. Deltran Operations USA, Inc.*, Case No. 2021-11308, at 12 (¶ 13) (Fla. Cir. Ct. Sept. 6, 2022) (attached hereto as Exhibit D and by reference incorporated herein).

29.    According to Deltran Operations, Defendants "were, and continue to

be, closely connected." *Deltona Transformer Corp. v. Deltran Operations USA, Inc.*, Case No. 2021-11308, at 2 (Fla. Cir. Ct. Dec. 14, 2021) (attached hereto as Exhibit E and by reference incorporated herein).

### 1.    Ownership and Control of DTC.

30.    Mr. Prelec Jr. is Mr. Prelec Sr.'s son.

31.    According to Mr. Prelec Jr., DTC was in the business of "manufacturing transformers, batteries, battery chargers, and related accessories under the Battery Tender trademark (the 'Battery Tender Business')." Ex. C at ¶ 58.

32.    According to Mr. Prelec Jr., since approximately 2009, Mr. Prelec Sr. "has effectively controlled DTC and directed all of its business operations, including the Battery Tender Business." *Id.* at ¶ 61.

33.    According to Mr. Prelec Jr., in April 2016, ownership of DTC was decentralized pursuant to a "Family Wealth Transfer" plan, *id.* at ¶ 69, and now, both Mr. Prelec Jr. and Mr. Prelec Sr. have an ownership interest in DTC.

34.    According to Mr. Prelec Jr., Mr. Prelec Sr. still owns a majority of DTC's preferred stock and "controls DTC, including its Board of Directors." *Id.* at ¶¶ 26, 34.

35.    According to Mr. Prelec Jr., Mr. Prelec Jr. owns significant shares of DTC as well, *id.* at ¶ 29, as do Mr. Prelec Sr.'s wife, sister, daughter (Mr. Prelec Jr.'s

sister), and nephews (Mr. Prelec Jr.'s cousins).  *Id.* at ¶¶ 26-32.

### 2.    Ownership and Control of Deltran.

36.    According to Mr. Prelec Jr., Mr. Prelec Sr. formed Deltran "as a wholly owned subsidiary of DTC and the operation of the Battery Tender Business was transferred from DTC to Deltran."  *Id.* at ¶ 65.

37.    According to Mr. Prelec Jr., Deltran is no longer a wholly-owned subsidiary of DTC.

38.    According to Mr. Prelec Jr. and Deltran Operations, in April 2016, ownership of Deltran was decentralized pursuant to the same Family Wealth Transfer plan.  *Id.* at ¶ 75; Ex. D at 11 (¶ 10) ("In 2016, Deltran was sold to Mike Sr.'s children and nephews in a family wealth transfer transaction.").

39.    According to Mr. Prelec Jr., Deltran is owned by Mr. Prelec Jr., his sister, and his cousins—all of whom are also owners of DTC.  Ex. C at ¶ 76.

40.    According to Mr. Prelec Jr., DTC, which Mr. Prelec Sr. "controls," *id.* at ¶ 34, is also an owner of Deltran.  *Id.* at ¶ 76.

### 3.    Ownership and Control of Deltran Operations.

41.    According to DTC, Deltran Operations is also owned by Mr. Prelec Jr., his sister, and his cousins—all of whom are also owners of Deltran and DTC. *See Deltona Transformer Corp. v. Deltran Operations USA, Inc.,* Case No. 2021-10437, at Exhibit B ("SCHEDULE A, SHAREHOLDERS") (Fla. Cir. Ct. Mar. 17, 2021)

(attached hereto as Exhibit F and by reference incorporated herein).

42.    According to DTC, DTC is also an owner of Deltran Operations.  *Id.*

**B.    Defendants Are Operating in Concert to Infringe the Claims of the Asserted Patents.**

43.    According to current USPTO records, the "Battery Tender" trademark and trademark registration used in connection with the sale and offer to sell the Accused Battery Tender® jump starters is owned by DTC and, upon information and belief, has been owned by DTC at all relevant times.  A true and correct copy of the relevant USPTO records showing ownership is attached hereto as Exhibit G and by reference incorporated herein.  Moreover, the copyright notice on Deltran Defendants' website (www.batterytender.com) provides that "Battery Tender®" is "a Deltona Transformer Brand," *i.e.*, a DTC brand.  *See, e.g.*, Exhibit H.

44.    According to Mr. Prelec Jr., although Deltran is now the operator of the Battery Tender business, DTC retained (and retains to this day) the intellectual property rights to the "Battery Tender" brand.  Ex. C at ¶ 66; *see also* Ex. D at 11 (¶ 10) (Deltran Operations representing that "Deltran [has] the exclusive worldwide license in perpetuity of the 'Battery Tender' brand and intellectual property.").

45.    Defendants are operating in concert to make, use, offer to sell, and/or sell jump starters within the United States, and/or import jump starters into the United States, including in the State of Florida, and in this District, which infringe

the Asserted Patents.

46.    Defendants are operating in concert to offer to sell and/or sell jump starters within the United States, including in the State of Florida, and in this District, over at least Deltran Defendants' website (www.batterytender.com) and the Amazon marketplace (www.amazon.com), which infringe the Asserted Patents.

47.    True and correct copies of screenshots of various infringing jump starters offered for sale and sold in the United States, including in this District, as of February 2025 from Deltran Defendants' website and the Amazon marketplace, are attached hereto as Exhibits I-T and by reference incorporated herein.

48.    As shown in Exhibits I-T, infringing jump starters available for purchase in the United States, including in this District, include at least: (1) the Battery Tender® 600 AMP Jump Starter – 6400mAh Power Bank (Exs. I, J); (2) the Battery Tender® 800 AMP Jump Starter – 7200mAh Power Bank; (3) the Battery Tender® 800 AMP Jump Starter and Tire Inflator (Exs. K, L); (4) the Battery Tender® 1000 AMP Jump Starter – 8000mAh Power Bank (Exs. M, N); (5) the Battery Tender® 1500 AMP Jump Starter – 12000mAh Power Bank (Exs. O, P); (6) the Battery Tender® 2000 AMP Jump Starter – 16000mAh Power Bank (Exs. Q, R); and (7) the Battery Tender® 2000 AMP Power Station with 100-Watt Inverter (Exs. S, T) (collectively, "the Accused Battery Tender® jump starters").

**1.    Deltran Defendants' Infringing Activities.**

49.    Deltran Defendants, with DTC's direction and encouragement, are making, using, and/or importing the Accused Battery Tender® jump starters in violation of 35 U.S.C. § 271.

50.    Deltran Defendants, with DTC's direction and encouragement, are offering to sell and/or selling the Accused Battery Tender® jump starters at least on Defendants' website (www.batterytender.com) in violation of 35 U.S.C. § 271. A review of the website shows, in part, that it is operated "by Deltran." *See, e.g.,* Ex. H.

51.    Deltran Defendants, with DTC's direction and encouragement, are offering to sell and/or selling the Accused Battery Tender® jump starters at least on the Amazon marketplace (www.amazon.com) in violation of 35 U.S.C. § 271, where again, consumers are shown that the "Amazon storefront" features the "Battery Tender®" mark "by Deltran," a true and correct copy of which is attached hereto as Exhibit U and by reference incorporated herein.

**2.    DTC's Infringing Activities.**

52.    DTC has exercised control and is intimately involved in directing and approving the design, manufacture, and distribution of the Accused Battery Tender® jump starters.  According to DTC, "Deltran designs, manufactures, and distributes products, including … Jump Starter products … which incorporate

DTC's know-how, trade secrets, documentation, data, software, and other knowledge, information, and materials controlled by DTC." *Deltona Transformer Corp. v. Deltran Operations USA, Inc.*, Case No. 2021-11308, at ¶ 12 (Fla. Cir. Ct. Sept. 3, 2021) (attached hereto as Exhibit V and by reference incorporated herein). And according to Deltran, "Michael Prelec, Sr. sits on [Deltran Operations'] board and has approved all of [Deltran Operations'] products." Ex. D at Exhibit A. So, both Defendants admit that DTC provides direction and approves the design, manufacture, and distribution (*i.e.*, sale) of the Accused Battery Tender® jump starters.

53.    Moreover, when DTC was asked to admit that it "ha[s] not provided Deltran with any guidelines, rules, or written parameters that [DTC] expect[s] Deltran to abide by governing the design of [Deltran's] Products," DTC denied the admission—admitting instead that it had provided such "guidelines, rules, or written parameters" directing the design of the Accused Battery Tender® jump starters. *Deltona Transformer Corp. v. Deltran Operations USA, Inc.*, Case No. 2021-11308, at ¶ 23 (Fla. Cir. Ct. Jan. 2, 2024) (attached hereto as Exhibit W and by reference incorporated herein).

54.    Likewise, when DTC was asked to admit that it "ha[s] not provided Deltran with any guidelines, rules, or written parameters that [DTC] expect[s] Deltran to abide by governing the manufacturing of the [Deltran's] Products,"

DTC again denied the admission—admitting instead that it had provided such "guidelines, rules, or written parameters" directing the manufacture of the Accused Battery Tender® jump starters. *Id.* at ¶ 24. Again, DTC admits to being intimately involved in directing and approving the design and manufacture of the Accused Battery Tender® jump starters.

55. "As part of the Family Wealth Transfer transaction, DTC … entered into an exclusive Worldwide License Agreement (the 'License Agreement') with Deltran …, which gave Deltran the exclusive right to use the Licensed Intellectual Property, as defined in the License Agreement, including the Battery Tender Brand." Ex. C at ¶ 81.

56. Section 4.01 of the License Agreement grants DTC the right to inspect, control and monitor Deltran's use of the "Licensed Products," which include the Accused Battery Tender® jump starters. Ex. V at ¶ 11.

57. DTC has exercised—and continues to exercise—the rights to inspect, control, and monitor Deltran's use of the "Licensed Products" by requesting, inspecting, and testing samples of the Accused Battery Tender® jump starters.

58. In 2020, "DTC's principal and majority shareholder" Mr. Prelec, Sr. "requested preproduction samples of all products approved by Deltran's engineering department, … in accordance with Section 4.01 of the Worldwide

Licensing Agreement." *Id.* at ¶ 15.

59.    In 2021, "DTC again requested samples of all Licensed Products, including the compositions and specifications, and all advertising and promotional material currently in use or planned to be used by Deltran within the current calendar year for DTC's inspection and approval in accordance with Sections 4.0l(b) and (c) of the Worldwide Licensing Agreement." *Id.* at ¶ 17.

60.    Deltran admits to fulfilling DTC's requests—as it must pursuant to the License Agreement—by supplying DTC with samples of the Accused Battery Tender® jump starters.    *See, e.g.*, Ex. D at Exhibit C ("DTC has previously requested or been provided with samples of most or all of [Deltran's] products.    If DTC provides a list of specific products it has not previously requested or received, they will be provided within a reasonable period of time."); *id.* at 12 (¶ 17) ("Deltran has not refused to provide samples.").

61.    According to Deltran Operations, "after DTC requested product samples on March 11, 2021, Deltran provided product images and openly offered to make product samples available in a letter dated May 13, 2021." *Id.*; *see also id.* at Exhibit B ("With respect to your demand to inspect the products listed in the first paragraph on page 2 of your March 11, 2021 letter, [Deltran Operations] will make available its products currently for sale in the U.S. for inspection at the

property it leases from DTC at a mutually convenient time.").

62. Deltran provided a photograph of the products supplied to DTC for inspection, which include the Accused Battery Tender® jump starters, as shown below.



*Id.*

63. By its own admission, DTC has used and continues to use the Accused Battery Tender® jump starters. In fact, DTC's requests for inspection and testing of the Accused Battery Tender® jump starters was prompted by a determination "that certain products did not meet DTC's quality control standards nor sound commercial practices in breach of the Worldwide Licensing Agreement and [so,

DTC] requested samples of such products to inspect," Ex. V at ¶ 36, showing that DTC has inspected and tested (*i.e.*, used in violation of 35 U.S.C. § 271) the Accused Battery Tender® jump starters.

64.    According to DTC, its inspection and testing efforts remain ongoing: "DTC has a present need [to inspect Deltran's products] to determine its right to terminate the Worldwide Licensing Agreement for cause." *Id.* at ¶ 41.

65.    On August 1, 2023, Mr. Prelec Sr., was deposed in *Melodee Clarke v. Michael Prelec, Sr.*, Case No. 2023-10160 CIDL (Fla. Cir. Ct.), the transcript of which is attached hereto as Exhibit X and by reference incorporated herein.

66.    During that deposition, Mr. Prelec Sr. was asked to "[g]ive … a summary of your daily routine in terms of what you do for DTC currently." Ex. X at 16:13-14. He explained that among other things he does "on a daily basis for DTC" is "[t]esting of products when I can get them from [Deltran Operations]. We request them all the time. We generally don't get them. Many times I have to go out onto Amazon and buy product and test it off the internet because I can't get it." *Id.* at 17:8-14.

67.    During the same deposition, when asked, "What is the purpose of your testing products from Deltran or Ops, as you call it?," Mr. Prelec Sr. answered, to "[m]ake sure they're up to snuff; make sure the quality is there." *Id.*

at 17:15-18.

68.    During the same deposition, when Mr. Prelec Sr. was asked to explain

his understanding of *Deltona Transformer Corp. v. Deltran Operations USA, Inc.*, Case

No. 2021-11308 CIDL (Fla. Cir. Ct.), he said the following:

> A. There again, we have the right to see everything they're doing as far as
> product, for quality control, for efficiencies.  And when we asked for
> product, we wouldn't get it.  We never got it.
>
> Q. Okay.
>
> A. That's my — that's the lessor, as the — per the royalty agreement,
> that they have to show me what they're doing: new products, how
> they're packaged, how they perform, up to our standards.  And they
> wouldn't do it.  They still refuse to do it.  They've sent us some
> things in the past couple of months.  The last — the one package they
> sent — package — they sent a pallet of product to Shutts down —
> rather than send it down the street to us, they sent it to Shutts.
> When we finally got it, 90 percent of it was old junk, unrelated to
> anything we needed.  It was a pile of junk.
>
> Q. Okay.  As you sit here today, do you know if the product that is
> being manufactured by Deltran Ops is deficient in any way, or that's
> what you're trying to find out?
>
> A. That's what we're trying to find out before they go to market
> with it.
>
> Q. Okay.  Have you heard any complaints from any consumers that
> would suggest to you that —
>
> A. If you —
>
> Q. Let me finish.  Have you heard any complaints from consumers
> that suggested to you the product that Deltran Ops was

manufacturing and shipping was deficient in any way?

A.  I've heard product deficiencies, yes.  And I've read it online, yes. If you go onto Amazon and look at some of the reviews, there's a lot of junk out there. And I'm trying to find out why.

Q.  Okay.  Other than Amazon, are you aware of any complaints about deficiencies in the product?

A.  Just some verbals from people calling me, consumers.

Ex. X at 133:13-135:5.  DTC has thus used and continues to use the Accused Battery Tender® jump starters.

**C.     Defendants' Knowledge of and Intent to Infringe the Asserted Patents.**

69.     Defendants have acted with knowledge of the Asserted Patents and NOCO's allegations of infringement.

70.     On January 9, 2020, NOCO filed a lawsuit against Defendants, alleging infringement of the claims of U.S. Patent No. 9,007,015 ("the '015 Patent"). Complaint, *NOCO Co. v. Deltona Transformer Corp.*, Case No. 6:20-cv-00050 (M.D. Fla. Jan. 9, 2020) (attached hereto as Exhibit Y and by reference incorporated herein).

71.     On November 13, 2023, NOCO filed a lawsuit against Defendants, alleging infringement of the claims of U.S. Patent Nos. 11,447,023, 11,584,243, and 11,667,203 ("the '203 Patent").  Complaint, *NOCO Co. v. Deltona Transformer Corp.*, Case No. 6:23-cv-02194 (M.D. Fla. Nov. 13, 2023) (attached hereto as Exhibit Z and

by reference incorporated herein).

72.    Both of the Asserted Patents claim priority to the '015 and '203 Patents.  Exs. A, B.

73.    Applications for both of the Asserted Patents were pending and issued during the pendency of NOCO's earlier lawsuits.  *Compare* Exs. A, B, *with* Exs. Y, Z.

74.    Defendants knew of these pending applications as a result of NOCO's lawsuits and/or Defendants' ongoing monitoring of NOCO's intellectual property.

75.    Defendants knew of each of the Asserted Patents as of the date of each patent's issuance.

76.    Defendants knew of each of the Asserted Patents no later than the filing of this Complaint.

77.    Defendants knew at all times of NOCO's infringement allegations, particularly those concerning the claims of the '015 and '203 Patents, which are similar to those alleged in this Complaint.   Defendants knew of NOCO's infringement allegations no later than the filing of this Complaint.

78.    Deltran Defendants acted with knowledge of the Asserted Patents and NOCO's infringement allegations, as well as with the intent to infringe the claims of the Asserted Patents by making, using, offering to sell, selling, and/or

importing the Accused Battery Tender® jump starters.

79.    DTC acted with knowledge of the Asserted Patents and NOCO's infringement allegations, as well as with the intent to infringe the claims of the Asserted Patents by using the Accused Battery Tender® jump starters.  DTC acted with knowledge of the Asserted Patents and NOCO's infringement allegations, as well as with the intent to encourage infringement the same claims by directing Deltran to make, use, offer to sell, sell, and/or import the Accused Battery Tender® jump starters, and provide the same to DTC for inspection.

**The '143 Patent**

80.    As set forth more fully below, the Accused Battery Tender® jump starters infringe one or more claims of the '143 Patent.

81.    The '143 Patent is generally directed to, among other features, safety features for eliminating overcharge and/or over discharge of a rechargeable battery in a hand held portable jump starter device.

82.    Exemplary independent claim 1 of the '143 Patent recites:

A hand held, portable jump starter device, comprising:

a housing having a multi-cell rechargeable battery including at least three battery cells connected in series, a USB input port for receiving a charging current from an external source to recharge the multi-cell rechargeable battery, and an output port for providing jump starting current to an external vehicle;

a USB charge circuit connected to the USB input port, the

USB charge circuit including a DC-to-DC converter circuit for upconverting an input voltage on the USB input port to a higher charging voltage for recharging the multi-cell rechargeable battery, and a pair of series connected transistor devices coupled between the DC-to-DC converter circuit and the multi-cell rechargeable battery for controlling current flow into and out of the multi-cell rechargeable battery;

a control circuit for detecting the voltage of the multi-cell rechargeable battery and configured to turn off the USB charge circuit to prevent over charging of the multi-cell rechargeable battery if the detected voltage exceeds a threshold value; and

a battery charge controller coupled to the multi-cell rechargeable battery and the pair of series connected transistor devices and configured to prevent over discharging of the multi-cell rechargeable battery.

Ex. A at col. 8, l. 47-col. 9, l. 4.

83.     Defendants make, use, offer to sell, sell, and/or import the Accused Battery Tender® jump starters within this District and throughout the United States that infringe one or more claims of the '143 Patent.

84.     For example, the Accused Battery Tender® jump starters are hand held, portable jump starter devices, examples of which are shown below:



*From left to right*: Battery Tender® 1000 AMP Jump Starter (Ex. M); Battery Tender® 1500 AMP Jump Starter (Ex. O); Battery Tender® 2000 AMP Jump Starter (Ex. Q).



Battery Tender® 600 AMP Jump Starter (Ex. I)

(www.batterytender.com/products/600-amp-jump-starter)

85.    The Accused Battery Tender® jump starters include a housing having

a multi-cell rechargeable battery including at least three battery cells connected in series, an example of which is shown below:



86.    The Accused Battery Tender® jump starters also include a USB input port (*e.g.*, a "Type–C USB, Input port – 5V, 2Amp, this Charges the internal battery contained inside the Jump Starter & Portable Power Bank," Ex. AA; *see also* Exs. AB-AF), for receiving a charging current from an external source to recharge the multi-cell rechargeable battery, examples of which are shown below:





*From left to right*: Battery Tender® 800 AMP Jump Starter and Tire Inflator (Ex. AB);

Battery Tender® 1500 AMP Jump Starter (Ex. AD).

87.    Some of the Accused Battery Tender® jump starters include both a

USB Type-C input port and a micro-USB input port.  For example, the Battery

Tender® 1000 AMP Jump Starter has both a "Type–C USB, In (Out) port –

5VDC/3Amp" and a "Micro USB Input port – 5VDC/2A," Ex. AC, as shown

below:



Battery Tender® 1000 AMP Jump Starter – 8000mAh Power Bank (Ex. AC).

| Type – C USB, In (Out) port | 5VDC, 3Amp |
|---|---|
| Micro USB Input port | 5VDC, 2Amp |

Battery Tender® 1000 AMP Jump Starter – 8000mAh Power Bank (Ex. AC).

88.    Upon information and belief and as described and depicted above, the power supply in each of the Accused Battery Tender® jump starters is charged/provided power through a USB-C connection.  Accordingly, the "USB input port" limitation is directly met by the Accused Battery Tender® jump starters.

89.    In the alternative, each of the Accused Battery Tender® jump starters includes a USB port that satisfies the claim limitation "a USB input port" under the doctrine of equivalents.  NOCO maintains that the correct construction of this claim limitation should encompass all forms and formats of USB standards, including at least those that were formally issued and those which were in draft form and otherwise known to those of skill in the art at the time of the invention.

The correct construction literally encompasses all of these known forms of USB at the time of the invention, as well as later issued USB standards.  Because all of the USB standards transfer power in a substantially similar manner as evidenced by the fact that at least some versions of the Accused Battery Tender® jump starters include both a USB-C and micro-USB port to charge the jump starter device, each of these USB input ports would also satisfy the claim limitation under the doctrine of equivalents.

90.    The Accused Battery Tender® jump starters also include an output port, referred to as a "Smart Alligator Clip Receptacle," for providing jump starting current to an external vehicle, examples of which are shown below:



Battery Tender® 1500 AMP Jump Starter (Ex. AD).



Battery Tender® 1500 AMP Jump Starter (Ex. O)

([www.batterytender.com/products/1500-amp-jump-starter](www.batterytender.com/products/1500-amp-jump-starter))

91.    Each of the Accused Battery Tender® jump starters also includes a USB charge circuit connected to the USB input port, the USB charge circuit including a DC-to-DC converter circuit for upconverting an input voltage (*e.g.*, 5V) on the USB input port to a higher charging voltage (*e.g.*, 12V) for recharging the multi-cell rechargeable battery, and a pair of series connected transistor devices coupled between the DC-to-DC converter circuit and the multi-cell rechargeable battery for controlling current flow into and out of the multi-cell rechargeable battery. See photographs, below, showing the DC-DC converter circuitry and the pair of series connected transistor devices.





92.    Each of the Accused Battery Tender® jump starters includes circuitry that literally meets the claim language with respect to "a USB charge circuit" at least because the same USB charge circuit is used regardless of whether the USB-C or micro-USB port is utilized. Additionally, no USB standard applies to or limits the claimed "USB charge circuit." USB standards are not concerned with internal device circuitry upstream or downstream of USB plugs, cables, and ports or connectors, such as internal circuitry that converts power received

through a USB port to voltage sufficient to charge an internal lithium-ion battery pack.

93.    In the alternative, each of the Accused Battery Tender® jump starters includes circuitry that satisfies the claim limitation "a USB charge circuit" under the doctrine of equivalents.  NOCO maintains that the correct construction of this claim limitation should encompass all forms and formats of USB standards, including at least those that were formally issued and those which were in draft form and otherwise known to those of skill in the art at the time of the invention. The correct construction literally encompasses all of these known forms of USB at the time of the invention, as well as later issued USB standards.  Because all of the USB standards transfer power in a substantially similar manner, each of these USB standards would also satisfy the claim limitation under the doctrine of equivalents.

94.    Each of the Accused Battery Tender® jump starters also includes a control circuit for detecting the voltage of the multi-cell rechargeable battery and for turning off the USB charge circuit to prevent over charging of the multi-cell rechargeable battery if the detected voltage exceeds a threshold value.



95.    Finally, as shown above, each of the Accused Battery Tender® jump

starters also includes a battery charge controller coupled to the multi-cell

rechargeable battery and the pair of series connected transistor devices to prevent

over discharging of the multi-cell rechargeable battery.

96.    Exemplary independent claim 23 of the '143 Patent recites:

A jump starting device for boosting or charging a depleted or discharged vehicle battery having a positive battery terminal and a negative battery terminal, the jump starting device comprising:

a power supply comprising a plurality of series connected lithium batteries;

a positive battery connector for electrically connecting the jump starting device to the positive battery terminal of the depleted or discharged vehicle battery;

a negative battery connector for electrically connecting the jump starting device to the negative battery terminal of the depleted or discharged vehicle battery;

a power switch coupled between the power supply and at least one of the positive and negative battery

connectors, the power switch configured to switch power on from the power supply to boost or charge the depleted or discharged vehicle battery when connected to the positive and negative battery connectors;

a USB input connector;

a USB charge circuit coupling the USB input connector to the power supply, the USB charge circuit comprising a power converter configured to upconvert voltage from the USB input connector to charge the series connected lithium batteries;

a battery charge controller coupled to the power supply for preventing over charging and over discharging of the series connected lithium batteries; and

a plug and a pair of cables integrated with the plug, the pair of cables being respectively connected to the positive battery connector and the negative battery connector, the plug being configured to connect to an output port of the jump starting device in a specific orientation.

Ex. A at col. 10, ll. 31-63.

97.    Exemplary dependent claim 24 of the '143 Patent, which depends

from independent claim 23, recites:

The jump starting device of claim 23, wherein the battery charge controller is further coupled to a pair of series coupled transistors configured to control the over charging and over discharging of the series connected lithium batteries, the pair of series coupled transistors comprising a discharge control transistor and a charge control transistor.

*Id.* at col. 10, l. 64-col. 11, l. 2.

98.    Exemplary dependent claim 25 of the '143 Patent, which depends

from independent claim 23, recites:

> The jump starting device of claim 23, wherein the battery charge controller is configured to detect the voltages of the series connected lithium batteries and to control the discharge and charge control transistors based on the detected battery voltages.

*Id.* at col. 11, ll. 3-7.

99.    Defendants make, use, offer to sell, sell, and/or import the Accused Battery Tender® jump starters within this District and throughout the United States that also infringe these exemplary claims of the '143 Patent.

100.    For example, the Accused Battery Tender® jump starters are jump starting devices for boosting or charging a depleted or discharged vehicle battery having a positive battery terminal and a negative battery terminal as shown below:



Battery Tender® 1500 AMP Jump Starter (Ex. O)

(www.batterytender.com/products/1500-amp-jump-starter)

101.    The Accused Battery Tender® jump starters include a power supply comprising a plurality of series connected lithium batteries, an example of which is shown below:



Power Supply

102.    The Instruction Manuals for the Accused Battery Tender® jump starters refer to power supply as a "lithium battery pack," Exs. AA-AF, and Defendants' website describes the Accused Battery Tender® jump starters as being "lithium-powered."  Exs. I, O, Q, S; *see also* Exs. K, M.

103.    The Accused Battery Tender® jump starters also include a positive battery connector (**red**) for electrically connecting the jump starting device to the positive battery terminal of the depleted or discharged vehicle battery and a negative battery connector (**black**) for electrically connecting the jump starting device to the negative battery terminal of the depleted or discharged vehicle battery, referred to as "Smart Alligator Clips," an example of which is shown

below:



Battery Tender® 1000 AMP Jump Starter – 8000mAh Power Bank (Ex. AC); *see*

*also* Exs. AA, AB, AD-AF.

104.    The Instruction Manuals for the Accused Battery Tender® jump

starters teach that users are to

> Connect the RED positive clip to the positive post on the battery, then
> the BLACK negative clip to the negative post on the battery.

Battery Tender® 1000 AMP Jump Starter – 8000mAh Power Bank (Ex. AC); *see*

*also* Exs. AA, AB, AD-AF.  An example of the Accused Battery Tender® jump

starters connected in this manner is shown below:



Battery Tender® 1500 AMP Jump Starter (Ex. O)

([www.batterytender.com/products/1500-amp-jump-starter](www.batterytender.com/products/1500-amp-jump-starter))

105.   The Accused Battery Tender® jump starters also include a power switch coupled between the power supply and at least one of the positive and negative battery connectors, an example of which is shown below:



106.   The power switch of the Accused Battery Tender® jump starters is configured to switch power on from the power supply (shown above) to boost or

charge the depleted or discharged vehicle battery when connected to the positive and negative battery connectors.

107.    The Accused Battery Tender® jump starters also include a USB input connector (*e.g.*, a USB Type-C input port or micro-USB input port, *see* Exs. AA-AF), examples of which are shown below:

 

*From left to right*: Battery Tender® 800 AMP Jump Starter and Tire Inflator (Ex. AC); Battery Tender® 1500 AMP Jump Starter (Ex. AD).  Some of the Accused Battery Tender® jump starters also include a micro-USB input port.  *See* Ex. AC.

108.    In the alternative, each of the Accused Battery Tender® jump starters includes a USB input port that satisfies the claim limitation "a USB input connector" under the doctrine of equivalents.  NOCO maintains that the correct construction of this claim limitation should encompass all forms and formats of

USB standards, including at least those that were formally issued and those which were in draft form and otherwise known to those of skill in the art at the time of the invention. The correct construction literally encompasses all of these known forms of USB at the time of the invention, as well as later issued USB standards. Because all of the USB standards transfer power in a substantially similar manner as evidenced by at least the fact that some of the Accused Battery Tender® jump starters include both a USB-C and micro-USB port to charge the jump starter device, each of these USB input ports would also satisfy the claim limitation under the doctrine of equivalents.

109.    The Accused Battery Tender® jump starters also include a USB charge circuit (shown below) coupling the USB input connector to the power supply. The USB charge circuit comprises a power converter (also shown below) configured to upconvert voltage from the USB input connector (*e.g.*, from 5V to 12V) to charge the series connected lithium batteries.





110.    Each of the Accused Battery Tender® jump starters includes circuitry that literally meets the claim language with respect to "a USB charge circuit" at least because the same USB charge circuit is used regardless of whether the USB-C or micro-USB port is utilized.  Additionally, no USB standard applies to or limits the claimed "USB charge circuit."  USB standards are not concerned with internal device circuitry upstream or downstream of USB plugs, cables, and ports or connectors, such as internal circuitry that converts power received through a USB port to voltage sufficient to charge an internal lithium-ion battery pack.

111.    In the alternative, each of the Accused Battery Tender® jump starters includes circuitry that satisfies the claim limitation "a USB charge circuit" under the doctrine of equivalents.  NOCO maintains that the correct construction of this claim limitation should encompass all forms and formats of USB standards,

including at least those that were formally issued and those which were in draft form and otherwise known to those of skill in the art at the time of the invention. The correct construction literally encompasses all of these known forms of USB at the time of the invention, as well as later issued USB standards. Because all of the USB standards transfer power in a substantially similar manner, each of these USB standards would also satisfy the claim limitation under the doctrine of equivalents.

112.    The Accused Battery Tender® jump starters also include a battery charge controller (shown below) coupled to the power supply for preventing over charging and over discharging of the series connected lithium batteries.



113.    The Accused Battery Tender® jump starters also include a plug, and a pair of cables (**Red**, **Black**) integrated with the plug, examples of which are shown below.



Battery Tender® 1000 AMP Jump Starter – 8000mAh Power Bank (Ex. AC).



Battery Tender® 800 AMP Jump Starter and Tire Inflator (Ex. AB).

114.   The pair of cables of the Accused Battery Tender® jump starters are respectively connected to the positive battery connector and the negative battery connector (shown below), with the plug being configured to connect to an output port (*i.e.*, the "Smart Alligator Clip Receptacle") of the jump starting device in a specific orientation.



Battery Tender® 1500 AMP Jump Starter (Ex. O)

([www.batterytender.com/products/1500-amp-jump-starter](www.batterytender.com/products/1500-amp-jump-starter))



Battery Tender® 1500 AMP Jump Starter (Ex. AD).

115.    The battery charge controller of the Accused Battery Tender® jump starters include a pair of series coupled transistors (shown below) configured to control the over charging and over discharging of the series connected lithium batteries.  The pair of series coupled transistors comprises a discharge control transistor and a charge control transistor (also shown below).



116. Finally, the battery charge controller of the Accused Battery Tender®

jump starters is configured to detect the voltages of the series connected lithium

batteries and to control the discharge and charge control transistors (shown

above) based on the detected battery voltages.

117. Exemplary independent claim 30 of the '143 Patent recites:

> A jump starting device for boosting or charging a
> depleted or discharged vehicle battery having a positive
> battery terminal and a negative battery terminal, the
> jump starting device comprising:
>
> a power supply comprising a plurality of series
> connected lithium batteries;
>
> a positive battery connector for electrically connecting
> the jump starting device to the positive battery terminal
> of the depleted or discharged vehicle battery;
>
> a negative battery connector for electrically connecting
> the jump starting device to the negative battery terminal
> of the depleted or discharged vehicle battery;
>
> a power switch coupled between the power supply and
> at least one of the positive and negative battery

connectors, the power switch configured to switch power on from the power supply to boost or charge the depleted or discharged vehicle battery when connected to the positive and negative battery connectors;

a USB input connector;

a USB charge circuit coupling the USB input connector to the power supply, the USB charge circuit comprising a power converter configured to upconvert voltage from the USB input connector to charge the series connected lithium batteries; and

a battery charge controller coupled to the power supply for preventing over charging and over discharging of the series connected lithium batteries,

wherein the power converter is a DC-to-DC converter for upconverting the voltage at the USB input connector to a higher voltage for charging the series connected lithium batteries, and

wherein the DC-to-DC converter comprises an integrated circuit device having an input pin coupled to the USB input connector and an output pin coupled to the power supply and a parallel connected inductor coupled to the integrated circuit DC-to-DC converter.

Ex. A at col. 10, ll. 31-63.

118.    Defendants make, use, offer to sell, sell, and/or import the Accused Battery Tender® jump starters within this District and throughout the United States that also infringe this exemplary claim of the '143 Patent.

119.    For example, the Accused Battery Tender® jump starters are jump starting devices for boosting or charging a depleted or discharged vehicle battery having a positive battery terminal and a negative battery terminal. *See* ¶ 100 *supra*.

120.    The Accused Battery Tender® jump starters include a power supply comprising a plurality of series connected lithium batteries.  *See* ¶¶ 101, 102 *supra*.

121.    The Accused Battery Tender® jump starters also include a positive battery connector for electrically connecting the jump starting device to the positive battery terminal of the depleted or discharged vehicle battery and a negative battery connector for electrically connecting the jump starting device to the negative battery terminal of the depleted or discharged vehicle battery (*i.e.*, the "Smart Alligator Clips").  *See* ¶¶ 103, 104 *supra*.

122.    The Accused Battery Tender® jump starters also include a power switch coupled between the power supply and at least one of the positive and negative battery connectors.  *See* ¶ 105 *supra*.

123.    The power switch of the Accused Battery Tender® jump starters is configured to switch power on from the power supply (shown above) to boost or charge the depleted or discharged vehicle battery when connected to the positive and negative battery connectors.  *See* ¶ 106 *supra*.

124.    The Accused Battery Tender® jump starters also include a USB input connector (*e.g.*, a USB Type-C input port or micro-USB input port, *see* Exs. AA-AF).  *See* ¶¶ 107, 108 *supra*.

125.    Upon information and belief and as described and depicted above, the power supply in each of the Accused Battery Tender® jump starters is

charged/provided power through a USB-C connection.  Accordingly, the "USB input connector" limitation is directly met by the Accused Battery Tender® jump starters.

126.    In the alternative, each of the Accused Battery Tender® jump starters includes a USB port that satisfies the claim limitation "a USB input connector" under the doctrine of equivalents.  NOCO maintains that the correct construction of this claim limitation should encompass all forms and formats of USB standards, including at least those that were formally issued and those which were in draft form and otherwise known to those of skill in the art at the time of the invention.  The correct construction literally encompasses all of these known forms of USB at the time of the invention, as well as later issued USB standards.  Because all of the USB standards transfer power in a substantially similar manner as evidenced by the fact that at least some versions of the Accused Battery Tender® jump starters include both a USB-C and micro-USB port to charge the jump starter device, each of these USB input ports would also satisfy the claim limitation under the doctrine of equivalents.

127.    The Accused Battery Tender® jump starters also include a USB charge circuit coupling the USB input connector to the power supply.  The USB charge circuit comprises a power converter configured to upconvert voltage from the USB input connector to charge the series connected lithium batteries.  *See*

¶¶ 109-111 *supra*.

128.    Each of the Accused Battery Tender® jump starters includes circuitry that literally meets the claim language with respect to "a USB charge circuit" at least because the same USB charge circuit is used regardless of whether the USB-C or micro-USB port is utilized.  Additionally, no USB standard applies to or limits the claimed "USB charge circuit."  USB standards are not concerned with internal device circuitry upstream or downstream of USB plugs, cables, and ports or connectors, such as internal circuitry that converts power received through a USB port to voltage sufficient to charge an internal lithium-ion battery pack.

129.    In the alternative, each of the Accused Battery Tender® jump starters includes circuitry that satisfies the claim limitation "a USB charge circuit" under the doctrine of equivalents.  NOCO maintains that the correct construction of this claim limitation should encompass all forms and formats of USB standards, including at least those that were formally issued and those which were in draft form and otherwise known to those of skill in the art at the time of the invention. The correct construction literally encompasses all of these known forms of USB at the time of the invention, as well as later issued USB standards.  Because all of the USB standards transfer power in a substantially similar manner, each of these USB standards would also satisfy the claim limitation under the doctrine of

equivalents.

130.    The Accused Battery Tender® jump starters also include a battery charge controller coupled to the power supply for preventing over charging and over discharging of the series connected lithium batteries. *See* ¶ 112 *supra*.

131.    The power converter of the Accused Battery Tender® jump starters is a DC-to-DC converter (shown below) for upconverting the voltage at the USB input connector to a higher voltage for charging the series connected lithium batteries.





132.    Finally, the DC-to-DC converter of the Accused Battery Tender® jump starters comprises an integrated circuit device (shown above) having an input pin coupled to the USB input connector and an output pin coupled to the power supply and a parallel connected inductor coupled to the integrated circuit DC-to-DC converter (all of which is also shown above).

**The '696 Patent**

133.    As set forth more fully below, the Accused Battery Tender® jump starters infringe one or more claims of the '696 Patent.

134.    The '696 Patent is generally directed to safety features for eliminating overcharge and/or over discharge of a rechargeable battery.

135.    Exemplary independent claim 1 of the '696 Patent recites:

An apparatus for jump starting a vehicle, comprising:

a handheld booster device comprising a rechargeable battery pack, a control circuit, a power switch, and an

output port, wherein the control circuit detects when it is safe to couple the handheld booster device to the vehicle's battery and connects the rechargeable battery pack to the output port thru the power switch; and

a jumper cable device comprising a plug and a pair of cables integrated with the plug, the plug being configured to connect to the output port of the handheld booster device in a specific orientation;

wherein the handheld booster device further comprises an input port for providing power from an external source to the rechargeable battery pack, and

wherein the handheld booster device further comprises a charge circuit connected to the input port, the charge circuit including an upconverter circuit coupled between the input port and the rechargeable battery pack for converting the voltage from the input port to a higher voltage for charging the rechargeable battery pack, and a pair of series connected transistor devices coupled between the upconverter circuit and the rechargeable battery pack for controlling current flow into and out of the rechargeable battery pack.

Ex. B at col. 8, ll. 42-65.

136. Defendants make, use, offer to sell, sell, and/or import the Accused Battery Tender® jump starters within this District and throughout the United States that infringe one or more claims of the '696 Patent.

137. For example, the Accused Battery Tender® jump starters are handheld booster devices comprising a rechargeable battery pack (*see* ¶ 84 *supra*), a control circuit (*see* ¶ 94 *supra*), a power switch (*see* ¶¶ 105, 106 *supra*), and an output port (*see* ¶ 90 *supra*), wherein the control circuit detects when it is safe to

couple the handheld booster device to the vehicle's battery and connects the rechargeable battery pack to the output port thru the power switch.

138.    In the alternative, if the "control circuit" or the "power switch" or any other feature of the Accused Battery Tender® jump starters is located in a housing outside the main handheld booster device, these limitations would still be met under the doctrine of equivalents.  NOCO maintains that the correct construction of these terms should encompass circuitry present in any component of the handheld booster device (jumper cable device or main handheld booster device).

139.    Each of the Accused Battery Tender® jump starters includes a jumper cable device comprising a plug and a pair of cables integrated with the plug (*i.e.*, the "Smart Alligator Clips"), the plug being configured to connect to the output port of the handheld booster device in a specific orientation, examples of which are shown below:



*From left to right*: Battery Tender® 600 AMP Jump Starter – 6400mAh Power Bank (Ex. AA); Battery Tender® 1000 AMP Jump Starter – 8000mAh Power Bank

(Ex. AC).

140.    Each of the Accused Battery Tender® jump starters also includes an input port for providing power from an external source to the rechargeable battery pack.  *See ¶¶ 86-89 supra*.

141.    Finally, each of the Accused Battery Tender® jump starters also includes a charge circuit connected to the input port, the charge circuit including an upconverter circuit coupled between the input port and the rechargeable battery pack for converting the voltage from the input port to a higher voltage for charging the rechargeable battery pack, and a pair of series connected transistor devices coupled between the upconverter circuit and the rechargeable battery pack for controlling current flow into and out of the rechargeable battery pack.  *See ¶¶ 91-93 supra*.

142.    Each of the Accused Battery Tender® jump starters includes circuitry that literally meets the claim language with respect to "charge circuit" because the charge circuit is not limited to a USB charge circuit or a particular type of USB charge circuit and because the same charge circuit in the Accused Battery Tender® jump starters is used regardless of whether the USB-C or micro-USB port is utilized.  Even if improperly limited to a USB charge circuit, no USB standard applies to or limits a USB charge circuit.  USB standards are not concerned with internal device circuitry upstream or downstream of USB plugs, cables, and ports

or connectors, such as internal circuitry that converts power received through a USB port to voltage sufficient to charge an internal lithium-ion battery pack.

143.    In the alternative, if "charge circuit" is improperly limited to a USB charge circuit, each of the Accused Battery Tender® jump starters includes circuitry that satisfies the claim limitation "charge circuit" under the doctrine of equivalents.  NOCO maintains that the correct construction of this claim limitation should encompass all forms and formats of charge circuits—without limitation. This includes all forms and formats of USB standards, including at least those that were formally issued and those which were in draft form and otherwise known to those of skill in the art at the time of the invention.  The correct construction literally encompasses all of these known forms of USB at the time of the invention, as well as later issued USB standards.  Because all of the USB standards transfer power in a substantially similar manner as evidenced by at least the fact that some of the Accused Battery Tender® jump starters include both a USB-C and micro-USB port connected in parallel to the same circuitry to charge the jump starter device, each of these USB standards would also satisfy the claim limitation under the doctrine of equivalents.

144.    Exemplary independent claim 23 of the '696 Patent recites:

> An apparatus for jump starting a vehicle, comprising:
>
> a handheld booster device comprising a power supply, wherein the power supply includes one or more

rechargeable batteries,

a vehicle battery sensor configured to detect presence of a vehicle battery connected to the apparatus,

a reverse polarity sensor, separate from the vehicle battery sensor, configured to detect a proper polarity connection between the apparatus and the vehicle battery,

a power switch configured to electrically connect the power supply to an output port of the handheld booster device, wherein the power switch is controlled based on signals from the vehicle battery sensor and the reverse polarity sensor such that the power supply is connected to the output port when both (i) the vehicle battery sensor currently indicates that the vehicle battery is connected to the apparatus, and (ii) the reverse polarity sensor currently indicates that the apparatus and the vehicle battery are connected with the proper polarity connection,

an input port configured to receive power from an external power source for charging the one or more batteries, and

a charge circuit connected to the input port, the charge circuit including a DC-DC converter circuit coupled between the input port and the one or more rechargeable batteries for converting the voltage from the input port to a higher voltage for charging the one or more rechargeable batteries, and a pair of series connected transistor devices coupled between the DC-DC converter circuit and the one or more rechargeable batteries for controlling current flow into and out of the one or more rechargeable batteries; and

a jumper cable device comprising a plug and a pair of cables integrated with the plug for connecting the handheld booster device to the vehicle battery, the plug being configured to connect to the output port of the

handheld booster device in a specific orientation.

Ex. B at col. 10, ll. 11-51.

145.    Defendants make, use, offer to sell, sell, and/or import the Accused Battery Tender® jump starters within this District and throughout the United States that also infringe this exemplary claim of the '696 Patent.

146.    For example, the Accused Battery Tender® jump starters are handheld booster devices. *See* ¶ 84 *supra*.

147.    The Accused Battery Tender® jump starters include a power supply having one or more rechargeable batteries. *See* ¶¶85, 101, 102 *supra*.

148.    The Accused Battery Tender® jump starters also include a vehicle battery sensor (shown below) configured to detect presence of a vehicle battery connected to the apparatus.



149. The Accused Battery Tender® jump starters also include reverse polarity sensor (also shown above), separate from the vehicle battery sensor, configured to detect a proper polarity connection between the apparatus and the vehicle battery.

150. Insofar as the Accused Battery Tender® jump starters implement the vehicle battery and reverse polarity sensors using a different combination of software and/or hardware, they still infringe under the doctrine of equivalents. Specifically, the Accused Battery Tender® jump starters: (1) detect the polarity of the vehicle battery's connection to the jump starter clamps and detect the presence of a connected vehicle battery; (2) measure the voltage across the vehicle battery connections and generate outputs that reflect the polarity of the connection and the presence of a connected vehicle battery that is used to control the power switch; and (3) prevent the jump starter from powering on the clamps when no vehicle battery is connected to the clamps and when the clamps are connected to the vehicle battery with reversed polarity.

151. The Accused Battery Tender® jump starters also include a power switch. *See* ¶ 105 *supra*.

152. The power switch of the Accused Battery Tender® jump starters is configured to electrically connect the power supply to an output port of the handheld booster device. *See* ¶ 106 *supra*.

153.    The power switch of the Accused Battery Tender® jump starters is controlled based on signals from the vehicle battery sensor and the reverse polarity sensor such that the power supply is connected to the output port when both (i) the vehicle battery sensor currently indicates that the vehicle battery is connected to the apparatus, and (ii) the reverse polarity sensor currently indicates that the apparatus and the vehicle battery are connected with the proper polarity connection. *See, e.g.*, Exs. I, K, M, O, Q, S (advertising the Accused Battery Tender® jump starters as having "[s]park-proof and reverse polarity protection" that "ensures *no charge is sent unless* the alligator clips are connected correctly to the battery" (emphasis added)).

154.    The Accused Battery Tender® jump starters also include a charge circuit connected to the input port. The charge circuit includes a DC-DC converter circuit coupled between the input port and the one or more rechargeable batteries for converting the voltage from the input port (*e.g.*, 5V) to a higher voltage (*e.g.*, 12V) for charging the one or more rechargeable batteries. *See* ¶¶ 91-93 *supra*.

155.    Each of the Accused Battery Tender® jump starters includes circuitry that literally meets the claim language with respect to "charge circuit" because the charge circuit is not limited to a USB charge circuit or a particular type of USB charge circuit and because the same charge circuit in the Accused Battery Tender® jump starters is used regardless of whether the USB-C or micro-USB port is

utilized. Even if improperly limited to a USB charge circuit, no USB standard applies to or limits a USB charge circuit. USB standards are not concerned with internal device circuitry upstream or downstream of USB plugs, cables, and ports or connectors, such as internal circuitry that converts power received through a USB port to voltage sufficient to charge an internal lithium-ion battery pack.

156. In the alternative, if "charge circuit" is improperly limited to a USB charge circuit, each of the Accused Battery Tender® jump starters includes circuitry that satisfies the claim limitation "charge circuit" under the doctrine of equivalents. NOCO maintains that the correct construction of this claim limitation should encompass all forms and formats of charge circuits—without limitation. This includes all forms and formats of USB standards, including at least those that were formally issued and those which were in draft form and otherwise known to those of skill in the art at the time of the invention. The correct construction literally encompasses all of these known forms of USB at the time of the invention, as well as later issued USB standards. Because all of the USB standards transfer power in a substantially similar manner as evidenced by at least the fact that some of the Accused Battery Tender® jump starters include both a USB-C and micro-USB port connected in parallel to the same circuitry to charge the jump starter device, each of these USB standards would also satisfy the claim limitation under the doctrine of equivalents.

157.    The charge circuit also includes a pair of series connected transistor devices coupled between the DC-DC converter circuit and the one or more rechargeable batteries for controlling current flow into and out of the one or more rechargeable batteries.  *See* ¶¶ 91, 115 *supra*.

158.    Finally, the Accused Battery Tender® jump starters also include a jumper cable device comprising a plug and a pair of cables integrated with the plug for connecting the handheld booster device to the vehicle battery.  *See* ¶ 113 *supra*.  The plug of the Accused Battery Tender® jump starters is configured to connect to the output port of the handheld booster device in a specific orientation. *See* ¶ 114 *supra*.

159.    In the alternative, if the "vehicle battery sensor," "reverse polarity sensor," or the "power switch," or any other feature of the Accused Battery Tender® jump starters is located in a housing outside the main handheld booster device, these limitations would still be met under the doctrine of equivalents. NOCO maintains that the correct construction of these terms should encompass circuitry present in either component of the handheld booster device (jumper cable device or main handheld booster device).

## COUNT ONE:
## DELTRAN DEFENDANTS' INFRINGEMENT OF
## U.S. PATENT NO. 12,187,143

160.    NOCO realleges, adopts, and incorporates by reference the

allegations included within ¶¶ 1-23, 24-51, and 69-132, as if fully set forth herein.

161.    Deltran Defendants have directly infringed the '143 Patent by making, using, importing, offering to sell, and/or selling the Accused Battery Tender® jump starters in the United States, without authority, in a manner that infringes at least independent claims 1, 23, and 30 of the '143 Patent to the injury of NOCO both literally and under the doctrine of equivalents.

162.    Deltran Defendants are liable for infringement of the '143 Patent pursuant to 35 U.S.C. § 271.

163.    Upon information and belief, Deltran Defendants have willfully infringed the '143 Patent.  Among other things, Deltran Defendants compete with NOCO.  NOCO's portfolio of issued patents is public knowledge and, upon information and belief, Deltran Defendants have actually known about the '143 Patent and its infringement thereof since prior to this lawsuit.

164.    As a result of Deltran Defendants' infringement of the '143 Patent, NOCO has suffered and will continue to suffer monetary damages, including lost profits and/or reasonable royalties, that are compensable under 35 U.S.C. § 284 in an amount to be determined at trial.  NOCO complied with the patent marking statute, 35 U.S.C. § 287(a), by providing an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent (https://ip.no.co/).

165. Unless an injunction is issued enjoining Deltran Defendants and their officers, agents, servants, employees, attorneys, representatives, affiliates, and all others acting on their behalf from infringing the '143 Patent, NOCO will continue to be greatly and irreparably harmed and has no adequate remedy at law.

**COUNT TWO:**
**DELTRAN DEFENDANTS' INFRINGEMENT OF**
**U.S. PATENT NO. 12,208,696**

166. NOCO realleges, adopts, and incorporates by reference the allegations included within ¶¶ 1-22, 24-51, 69-79, and 133-159, as if fully set forth herein.

167. Deltran Defendants have directly infringed the '696 Patent by making, using, importing, offering to sell, and/or selling the Accused Battery Tender® jump starters in the United States, without authority, in a manner that infringes at least independent claims 1 and 23 of the '696 Patent to the injury of NOCO both literally and under the doctrine of equivalents.

168. Deltran Defendants are liable for infringement of the '696 Patent pursuant to 35 U.S.C. § 271.

169. Upon information and belief, Deltran Defendants have willfully infringed the '696 Patent. Among other things, Deltran Defendants compete with NOCO. NOCO's portfolio of issued patents is public knowledge and, upon information and belief, Deltran Defendants have actually known about the '696

Patent and its infringement thereof since prior to this lawsuit.

170.    As a result of Deltran Defendants' infringement of the '696 Patent, NOCO has suffered and will continue to suffer monetary damages, including lost profits and/or reasonable royalties, that are compensable under 35 U.S.C. § 284 in an amount to be determined at trial.  NOCO complied with the patent marking statute, 35 U.S.C. § 287(a), by providing an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent (https://ip.no.co/).

171.    Unless an injunction is issued enjoining Deltran Defendants and their officers, agents, servants, employees, attorneys, representatives, affiliates, and all others acting on their behalf from infringing the '696 Patent, NOCO will continue to be greatly and irreparably harmed and has no adequate remedy at law.

## COUNT THREE:
## DTC'S INFRINGEMENT OF U.S. PATENT NO. 12,187,143

172.    NOCO realleges, adopts, and incorporates by reference the allegations included within ¶¶ 1-23, 25-48, and 52-132, as if fully set forth herein.

173.    DTC has directly infringed the '143 Patent by using the Accused Battery Tender® jump starters in the United States, without authority, in a manner that infringes at least independent claims 1, 23, and 30 of the '143 Patent to the injury of NOCO both literally and under the doctrine of equivalents.

174.    DTC has actively induced infringement of the '143 Patent by directing and/or encouraging Deltran to make, use, offer to sell, and/or sell the Accused Battery Tender® jump starters in the United States, without authority, in a manner that infringes at least independent claims 1, 23, and 30 of the '143 Patent to the injury of NOCO both literally and under the doctrine of equivalents.

175.    DTC is liable for infringement of the '143 Patent pursuant to 35 U.S.C. § 271.

176.    Upon information and belief, DTC has willfully infringed the '143 Patent.  Among other things, DTC competes with NOCO.  NOCO's portfolio of issued patents is public knowledge and, upon information and belief, DTC has actually known about the '143 Patent and its infringement thereof since prior to this lawsuit.

177.    As a result of DTC's infringement of the '143 Patent, NOCO has suffered and will continue to suffer monetary damages, including lost profits and/or reasonable royalties, that are compensable under 35 U.S.C. § 284 in an amount to be determined at trial.  NOCO complied with the patent marking statute, 35 U.S.C. § 287(a), by providing an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent (https://ip.no.co/).

178.    Unless an injunction is issued enjoining DTC and its officers, agents,

servants, employees, attorneys, representatives, affiliates, and all others acting on their behalf from infringing the '143 Patent, NOCO will continue to be greatly and irreparably harmed and has no adequate remedy at law.

## COUNT FOUR:
## DTC'S INFRINGEMENT OF U.S. PATENT NO. 12,208,696

179.    NOCO realleges, adopts, and incorporates by reference the allegations included within ¶¶ 1-22, 24-48, 52-79, and 133-159 as if fully set forth herein.

180.    DTC has directly infringed the '696 Patent by using the Accused Battery Tender® jump starters in the United States, without authority, in a manner that infringes at least independent claims 1 and 23 of the '696 Patent to the injury of NOCO both literally and under the doctrine of equivalents.

181.    DTC has actively induced infringement of the '696 Patent by directing and/or encouraging Deltran to make, use, offer to sell, and/or sell the Accused Battery Tender® jump starters in the United States, without authority, in a manner that infringes at least independent claims 1 and 23 of the '696 Patent to the injury of NOCO both literally and under the doctrine of equivalents.

182.    DTC is liable for infringement of the '696 Patent pursuant to 35 U.S.C. § 271.

183.    Upon information and belief, DTC has willfully infringed the '696 Patent.  Among other things, DTC competes with NOCO.  NOCO's portfolio of

issued patents is public knowledge and, upon information and belief, DTC has actually known about the '696 Patent and its infringement thereof since prior to this lawsuit.

184.    As a result of DTC's infringement of the '696 Patent, NOCO has suffered and will continue to suffer monetary damages, including lost profits and/or reasonable royalties, that are compensable under 35 U.S.C. § 284 in an amount to be determined at trial.    NOCO complied with the patent marking statute, 35 U.S.C. § 287(a), by providing an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent (https://ip.no.co/).

185.    Unless an injunction is issued enjoining DTC and its officers, agents, servants, employees, attorneys, representatives, affiliates, and all others acting on their behalf from infringing the '696 Patent, NOCO will continue to be greatly and irreparably harmed and has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, NOCO prays for the following:

(a)    Judgment for NOCO and against Defendants on all Counts asserted herein;

(b)    Permanent injunctive relief enjoining Defendants and their officers, agents, servants, employees, attorneys, representatives, affiliates, and all others

acting on their behalf or in active concert or participation with them from infringement of the Asserted Patents;

(c)    Damages to which NOCO is entitled including, without limitation, as provided under 35 U.S.C. § 284;

(d)    Actual, statutory, and compensatory damages as proven at trial;

(e)    Enhanced damages in an amount equal to three times NOCO's damages for Defendants' willful infringement post-suit of the Asserted Patents pursuant to 35 U.S.C. § 284;

(f)    Pre-judgment and post-judgment interest;

(g)    That the Court find that this is an exceptional case within the meaning of 35 U.S.C. § 285;

(h)    NOCO's costs, expenses, and reasonable attorneys' fees and litigation expenses incurred in this action; and

(i)    Such other relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

NOCO hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: February 17, 2025

Respectfully submitted,

By:  */s/ Grant Edward Lavelle Schnell*

Grant Edward Lavelle Schnell, Esq.
Florida Bar No. 108109
JONES DAY
1221 Peachtree Street N.E., Suite 400
Atlanta, GA 30361
Email: gschnell@jonesday.com
Telephone: (404) 581-8023

Meredith M. Wilkes (*Pro Hac Vice* forthcoming)
Email: mwilkes@jonesday.com
David B. Cochran (*Pro Hac Vice* forthcoming)
Email: dcochran@JonesDay.com
John C. Evans (*Pro Hac Vice* forthcoming)
Email: jcevans@jonesday.com
JONES DAY
901 Lakeside Ave. E
Cleveland, OH 44114
Telephone: (216) 586-3939

Joseph D. Farley (*Pro Hac Vice* forthcoming)
JONES DAY
325 John H. McConnell Blvd.
Suite 600
Columbus, OH 43215
Email: jfarley@jonesday.com
Telephone: (614) 469-3939

*Attorneys for Plaintiff*
*The NOCO Company*

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on February 17, 2025, I have caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

<u>*/s/ Grant Edward Lavelle Schnell*</u>
Grant Edward Lavelle Schnell, Esq.

*Attorney for Plaintiff*
*The NOCO Company*

**Exhibit List**

| Exhibit | Description |
|---------|-------------|
| A | U.S. Patent No. 12,187,143 |
| B | U.S. Patent No. 12,208,696 |
| C | *Prelec v. Deltona Transformer Corp.*, Case No. 2023-12871 (Fla. Cir. Ct. Mar. 5, 2024) |
| D | *Deltona Transformer Corp. v. Deltran Operations USA, Inc.*, Case No. 2021-11308 (Fla. Cir. Ct. Sept. 6, 2022) |
| E | *Deltona Transformer Corp. v. Deltran Operations USA, Inc.*, Case No. 2021-11308 (Fla. Cir. Ct. Dec. 14, 2021) |
| F | *Deltona Transformer Corp. v. Deltran Operations USA, Inc.*, Case No. 2021-10437 (Fla. Cir. Ct. Mar. 17, 2021) |
| G | USPTO webpage for "Battery Tender" word mark |
| H | Battery Tender webpage |
| I | BatteryTender.com webpage for Battery Tender® 600 AMP Jump Starter – 6400mAh Power Bank |
| J | Amazon.com webpage for Battery Tender® 600 AMP Jump Starter – 6400mAh Power Bank |
| K | BatteryTender.com webpage for Battery Tender® 800 AMP Jump Starter And Tire Inflator |
| L | Amazon.com webpage for Battery Tender® 800 AMP Jump Starter And Tire Inflator |
| M | BatteryTender.com webpage for Battery Tender® 1000 AMP Jump Starter – 8000mAh Power Bank |
| N | Amazon.com webpage for Battery Tender® 1000 AMP Jump Starter – 8000mAh Power Bank |
| O | BatteryTender.com webpage for Battery Tender® 1500 AMP Jump |

| | | |
|---|---|---|
| | | Starter – 12000mAh Power Bank |
| P | | Amazon.com webpage for Battery Tender® 1500 AMP Jump Starter – 12000mAh Power Bank |
| Q | | BatteryTender.com webpage for Battery Tender® 2000 AMP Jump Starter – 16000mAh Power Bank |
| R | | Amazon.com webpage for Battery Tender® 2000 AMP Jump Starter – 16000mAh Power Bank |
| S | | BatteryTender.com webpage for Battery Tender® 2000 AMP Power Station with 100 Watt Inverter |
| T | | Amazon.com webpage for Battery Tender® 2000 AMP Power Station with 100 Watt Inverter |
| U | | Amazon "Battery Tender" Store webpage |
| V | | *Deltona Transformer Corp. v. Deltran Operations USA, Inc.*, Case No. 2021-11308 (Fla. Cir. Ct. Sept. 3, 2021) |
| W | | *Deltona Transformer Corp. v. Deltran Operations USA, Inc.*, Case No. 2021-11308 (Fla. Cir. Ct. Jan. 2, 2024) |
| X | | Deposition Transcript of Michael L. Prelec, Sr., *Clarke v. Prelec*, Case No. 2023-10160 CIDL (Fla. Cir. Ct. Oct. 24, 2023) |
| Y | | *Complaint, NOCO Co. v. Deltona Transformer Corp.*, Case No. 6:20-cv-00050 (M.D. Fla. Jan. 9, 2020) |
| Z | | *Complaint, NOCO Co. v. Deltona Transformer Corp.*, Case No. 6:23-cv-02194 (M.D. Fla. Nov. 13, 2023) |
| AA | | Instruction Manual for Battery Tender® 600 AMP Jump Starter – 6400mAh Power Bank |
| AB | | Instruction Manual for Battery Tender® 800 AMP Jump Starter And Tire Inflator |
| AC | | Instruction Manual for Battery Tender® 1000 AMP Jump Starter – 8000mAh Power Bank |

| AD | Instruction Manual for Battery Tender® 1500 AMP Jump Starter – 12000mAh Power Bank |
|----|-----|
| AE | Instruction Manual for Battery Tender® 2000 AMP Jump Starter – 16000mAh Power Bank |
| AF | Instruction Manual for Battery Tender® 2000 AMP Power Station with 100 Watt Inverter |