**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**THE NOCO COMPANY,**

       **Plaintiff,**

v.                                                            **Case No: 6:25-cv-251-PGB-DCI**

**DELTONA TRANSFORMER
CORPORATION, DELTRAN
USA, LLC and DELTRAN
OPERATIONS USA, INC.,**

       **Defendants.**
_____/

## ORDER

This cause is before the Court on the following:

1. Plaintiff The Noco Company's ("**Plaintiff**" or "**NOCO**") Motion to Dismiss Counts III and VI of Deltran USA, LLC and Deltran Operations USA, Inc.'s (collectively, the "**Defendants**") Counterclaims of Inequitable Conduct (Doc. 59 (the "**Motion to Dismiss**"));

2. Defendants' Response in Opposition to the Motion to Dismiss (Doc. 64);

3. Plaintiff's Motion to Strike Defendants' Affirmative Defense of Inequitable Conduct (Doc. 60 (the "**Motion to Strike**")); and

4. Defendants' Response in Opposition to the Motion to Strike. (Doc. 65).

Upon consideration, Plaintiff's Motion to Dismiss (Doc. 59) and Motion to Strike (Doc. 60) are denied.

## I. BACKGROUND

### A. The Earlier Suits (6:20-cv-50 and 6:23-cv-2194)

This is the third patent infringement lawsuit brought by NOCO against the Defendants. In the first suit, 6:20-cv-50, NOCO claimed that the Defendants infringed U.S. Patent No. 9,007,015 (the "**'015 patent**"). (Case No. 6:20-cv-50, Doc. 23). The '015 Patent, like the patents-in-suit here, discloses and claims a handheld device for jump-starting a vehicle engine. (*Id*. ¶ 17). In the second patent infringement suit commenced by NOCO against the Defendants (Case No. 6:23-cv-2194), NOCO alleged that the Defendants infringed three related patents: U.S. Patent Nos. 11,447,023 (the "**'023 patent**"), 11,584,243 (the "**'243 patent**"), and 11,667,203 (the "**'203 patent**"). (Case No. 6:23-cv-2194, Doc. 71). As here, NOCO moved to dismiss Defendants' counterclaim that the patents at issue are unenforceable based on NOCO's inequitable conduct. (*See* Case No. 6:23-cv-2194, Doc. 42).

The Defendants countered that NOCO, through inventors Nook and Underhill, claimed to invent something they did not invent. (Case No. 6:23-cv-2194, Doc. 46, p. 3). That is, after visiting the Shenzhen Carku Technology Co. Ltd. ("**Carku**") manufacturing facility in China and obtaining two portable jump starters, Nook and Underhill, via NOCO, filed a patent application for a device that is functionally identical to the devices obtained from the Carku plant. (*Id*.). The

Defendants argued that "[n]one of the documents or information related to the Carku devices were provided to the [PTO] during the prosecution of the '015 Patent." (*Id.*). Finally, the Defendants averred that the '023, '243, and '203 patents claim the same invention as claim 11 of the '015 patent.[1] (*Id.*). Defendants sought, and were granted, a stay pending completion of an *Inter Partes Review* of the three patents-in-suit. (Case No. 6:23-cv-2194, Doc. 85).

B.   **The Instant Patent Infringement Suit**

In this third iteration of its patent infringement litigation, NOCO alleges the Defendants' infringement of U.S. Patent Nos. 12,187,143 (the "**'143 patent**") and 12,208,696 (the "**'696 patent**"). (Doc. 1). The Asserted Patents pertain to the same "Portable Vehicle Battery Jump Start Apparatus With Safety Protection." (*Id.* ¶¶ 23–24). The Defendants counter that Nook and Underhill never invented the subject device and assert as an affirmative defense and as a counterclaim that the patents-in-suit should be declared unenforceable due to Plaintiff's inequitable conduct. (Doc. 45, pp. 71–76, 77–84). NOCO moves to dismiss the affirmative defenses and counterclaims asserting inequitable conduct, because Defendants' allegations fail to "meet the rigors of Rule 9(b)" of the Federal Rules of Civil Procedure. (Doc. 59, pp. 1–2).

---

[1]   Ultimately, the Patent Trial and Appeal Board ("**PTAB**") invalidated all but one claim of the '015 Patent. *See Shenzhen Carku Tech. Co. v. NOCO Co.*, IPR2020-00944, 2021 WL 5193901, at *38-39, 44 (P.T.A.B. Nov. 3, 2021), *aff'd NOCO v. Shenzhen Carku Tech. Co.*, No. 2022-1646, 2022-1741, 2024 WL 540022 (Fed. Cir. Feb. 12, 2024).

The Defendants assert that the '143 Patent is unenforceable due to NOCO's inequitable conduct during the prosecution of the '143 Patent ***and its parent applications***. (Doc. 45, ¶ 130 (emphasis added)). The Defendants specify the information that was known to the named inventors and NOCO's prosecution counsel and describe how material information was withheld from the USPTO. (*Id.* ¶¶ 131–44). The Defendants offer the same analysis for the '696 Patent. (*Id.* ¶¶ 153–176). The Defendants also assert that "the main issue [here is] whether [they] adequately pled that inequitable conduct during the prosecution of the parent patents (including [the '015 Patent]) rendered the essentially same claims of the patents-in-suit unenforceable." (Doc. 64, pp. 1–2). Defendants further note that this Court denied NOCO's motion to dismiss Defendants' counterclaim asserting inequitable conduct in Case No. 6:23-cv-2195, wherein, *inter alia*, the Defendants alleged that the documents related to the Carku devices were not provided to the PTO during the prosecution of the '015 Patent. (*Id.* at p. 1; *see* Case No. 6:23-cv-2154, Doc. 66, pp. 5–6). Finally, the Defendants contend that NOCO's citation to and reliance upon subsequent patent application material that was previously withheld with intent to deceive the USPTO does not "save[] the later issued patent from the consequences of the misconduct." (Doc. 64, p. 2 (quoting *Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1571–72 (Fed. Cir. 1983)).

## II. LEGAL STANDARDS

### A. Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions and recitation of a claim's elements are properly disregarded, and courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

Furthermore, in ruling on a motion to dismiss, "[a] court is generally limited to reviewing what is within the four corners of the complaint" and the attachments thereto which are undisputed and central to the claim. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002); *Austin v. Mod. Woodman of Am.*, 275 F. App'x 925, 926 (11th Cir. 2008)[2] (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006)).

---

[2] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

In sum, courts must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

### B. Pleading Inequitable Conduct

Inequitable conduct "must be pled with particularity" under Rule 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009); FED. R. CIV. P. 9(b). "Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327. "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Id.* at 1326–27. Federal Circuit law governs whether an inequitable conduct pleading satisfies Rule 9(b). *Id.* at 1318. Moreover, the Federal Circuit has explained that:

> a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Id.* at 1328–29. That is, "inequitable conduct requires a showing that undisclosed prior art was but-for material to the PTO's decision of patentability. Prior art is but-for material if the PTO would have denied a claim had it known of the undisclosed prior art." *See Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 991

(Fed. Cir. 2022) (citing *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011)).

## III. DISCUSSION

The issue before the Court is whether the Defendants properly pleaded inequitable conduct by NOCO, not whether they will succeed at trial on their unenforceability claim. *See Exergen*, 575 F.3d at 1327–28; FED. R. CIV. P. 9(b). The Court finds Defendants have met their burden of pleading inequitable conduct in accordance with the requirements of Rule 9(b). *See* FED. R. CIV. P. 9(b). That is, they adequately detail the "who, what, when, where, and how of the material misrepresentations and omissions" in their counterclaims and affirmative defenses. *Exergen*, 575 F.3d at 1327.

NOCO's assertion that the "actual file histories [excluding the datasheets] were disclosed by NOCO to the patent examiner during the prosecution of the Asserted Patents" misses the point for two reasons. (Doc. 59, p. 4). First, as the Defendants correctly note, reliance on later patent application material that was previously withheld with the intent to deceive the USPTO does not "save[] the later issued patent from the consequences of the misconduct." (Doc. 64, p. 2 (quoting *Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1571–72 (Fed. Cir. 1983)).

Second, the Plaintiff asks the Court to take judicial notice of over 500 pages of information allegedly provided to the PTO after the '015 Patent was issued. The Plaintiff did not file a motion requesting that the Court take judicial notice of the material under Federal Rule of Evidence 201. *See also* Local Rule 3.01. Instead,

7

NOCO merely includes a footnote suggesting that the records are of a type suitable for judicial notice. (Doc. 59, p. 10 n.3). Judicial notice is not just a formality and requires a properly supported motion—not a request embedded within another motion. The Court rejects the Plaintiff's claim that the consideration of 500 pages of material will not turn the motion to dismiss into a motion for summary judgment. Since the Plaintiff did not properly request judicial notice, the Court will not consider the attached documents.

The Court finds that the Defendants have sufficiently pleaded the affirmative defense and counterclaims based on inequitable conduct. Accordingly, the Plaintiff's Motion to Dismiss and related Motion to Strike are denied.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Dismiss Counts III and VI of Deltran USA, LLC and Deltran Operations USA, Inc.'s Counterclaims of Inequitable Conduct (Doc. 59) is **DENIED**;

2. Plaintiff's Motion to Strike Deltran USA, LLC and Deltran Operations USA, Inc.'s Affirmative Defense of Inequitable Conduct (Doc. 60) is **DENIED**; and

3. Plaintiff is **DIRECTED** to Answer Deltran USA, LLC and Deltran Operations USA, Inc.'s Counterclaims **within fourteen (14) days** of this Order.

**DONE AND ORDERED** in Orlando, Florida on August 31, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties